# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### No. 5:11-CR-229-F-8
#### No. 5:14-CV-374-F

DAVID G. LEWIS, )
)
          Movant, )
)
vs. )     **ORDER**
)
UNITED STATES OF AMERICA, )
)
          Respondent. )
_____ )

Before the court are *pro se* Movant David G. Lewis' ("Movant" or "Lewis") motion [DE 491] to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, and the Government's motion [DE 497] to dismiss the § 2255 motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Movant responded to the Government's motion. [DE 512]. The Government did not reply. For the reasons that follow, the court will allow the Government's 12(b)(6) motion and dismiss Movant's § 2255 motion.[1]

## I.  BACKGROUND

This matter arises out of a methamphetamine production and distribution conspiracy among Movant and his ten co-defendants – Valerie Simmons (Movant's stepdaughter), Aaron Simmons (Valerie's husband and Movant's son-in-law), Kevin Halpin (Valerie's boyfriend), Barry Miller, Stacy Mayo, Randy Moore, Heather Webb, William Jernigan, Amanda Spencer and Stephanie Smith. Movant's former business, The Corvette Shop (the "shop"), served as the "hub" of the conspiracy.

---

[1]     The November 15, 2011 [DE 390], November 16, 2011 [DE 391], November 17, 2011 [DE 392] and November 18, 2011 [DE 393] trial transcripts are cited herein as TT1, TT2, TT3 and TT4, respectively.

On October 5, 2011, a grand jury returned a superseding indictment against Movant and co-defendants. On November 7, 2011, all co-defendants entered guilty pleas. On November 15, 2011, Movant proceeded to a jury trial.

During the trial, the Government presented the following witnesses: Jeffrey Lux, Anthony Carter, Ray Genthener, Brittany Dewell, Jeremy Creech, Genard Patrick, Kelly Page (law enforcement officials), Phillip Poppell,[2] Dustin Boykin[3] and co-defendants Aaron Simmons ("Aaron"), Valerie Simmons ("Valerie"), Kevin Halpin and Stephanie Smith. Cathy Lewis (Movant's wife), Jonathan Thompson and Movant testified on behalf of the defense. On November 21, 2011, a jury found Movant guilty of conspiracy to manufacture, distribute, dispense, and possess with intent to distribute 500 grams or more of a mixture and a substance containing a detectable amount of methamphetamine (count 1), possession of pseudoephedrine with intent to manufacture methamphetamine and aiding and abetting this offense (count 2), and possession of equipment, chemicals, and other materials used to manufacture methamphetamine and aiding and abetting this offense (counts 3 and 12). *See* 21 U.S.C. §§ 2, 841(c)(1), 843(a)(6), 846.

On June 7, 2012, the court entered judgment, sentencing Movant within the advisory Guidelines range to concurrent prison terms of 327 months on count one, 240 months on count two and 120 months on each of counts three and twelve as well as concurrent terms of supervised release of five years (count 1) and three years (counts 2, 3, 12). [DE 400]. Movant

---

[2]     Phillip Poppell – arrested at the shop on February 8, 2010 – testified that he met Movant in December 2009 via Stephanie Smith and that he sold Movant cocaine. TT1 at 116:9-11, 118: 22-25, 119:1-5, 128:22-25. In January 2010, Phillip drove his brother, Malachi Poppell, to the shop because "the Wake County Sheriff's Department was looking for [Malachi] and [Phillip] thought [the shop] might be a nice place for [Malachi] to hang out," which he did for approximately one week. *Id.* at 119:6-7, 22-25, 120:3-9; TT3 at 635:13-14.

[3]     Dustin Boykin testified that he sold methamphetamine to Movant "on a daily basis" beginning "in the middle of 2008" until July 22, 2009 – the day of Boykin's arrest. TT2 at 172:5-7, 175:22-25, 176:3-4. Boykin described Movant as his "best customer." *Id.* at 176:9-10.

2

appealed his judgment, arguing (1) the court failed to instruct the jury "that it was required to determine whether 500 grams or more of methamphetamine was reasonably foreseeable to Movant" in contravention of *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005), (2) the court "erred in instructing the jury on count one because it did not instruct the jury that it needed to 'unanimously agree' Lewis conspired to violate at least one of the three objects of the conspiracy charged in the superseding indictment," and (3) trial counsel rendered ineffective assistance prior to trial, at trial and at sentencing. *See United States v. Lewis*, 517 F. App'x 153, 154-55 (4th Cir. 2013).

On April 3, 2013, the Fourth Circuit rejected Movant's arguments and affirmed the judgment. *Id.* Movant did not file a petition for writ of certiorari from the Fourth Circuit's judgment; thus, Movant's criminal judgment became final 90 days later on July 2, 2013. Accordingly, the statutory period during which Movant could timely file his petition ended on July 2, 2014. Movant's motion, filed June 27, 2014, is thus timely. Movant asserts six grounds for post-conviction relief, all under the theory of ineffective assistance of counsel.[4]

## II.     LEGAL STANDARDS

### A.     28 U.S.C. § 2255

Under § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence on grounds that it (1) was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "In a § 2255 proceeding, the burden of proof is on [the movant] to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, No.

---

[4]     Movant's sixth claim for relief appears in his reply brief to the Government's response. *See* Lewis' Reply, Ex. K [DE 512-1 at 7].

7:05-CR-97-FL, 2010 U.S. Dist. LEXIS 113549 at *5 (E.D.N.C. Oct. 25, 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)). While a court may in its discretion hold an evidentiary hearing on a § 2255 motion, such a hearing need not be held if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## B.    Fed. R. Civ. P., 12(b)(6)

Rule 12(b)(6) provides for dismissal of claims for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A court may consider a motion to dismiss pursuant to Rule 12(b)(6) challenging the legal sufficiency of a § 2255 motion. *See United States v. Reckmeyer*, No. 89-7598, 1990 U.S. App. LEXIS 26950, at *14 (4th Cir. Apr. 2, 1990).[5]

In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a [Movant] will ultimately prevail but whether [he] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). A movant's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will

---

[5]    *See also* Rule 12, Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); FED. R. CIV. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255 proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions").

not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and brackets omitted). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged pleading and view those allegations in the light most favorable to the movant. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

## C.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel and exists "in order to protect the fundamental right to a fair trial." *Lockhart v. Fretwall*, 506 U.S. 364, 368 (1993). Sixth Amendment ineffective assistance of counsel claims are examined under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a claim for ineffective assistance of counsel, a movant must show that (1) counsel's performance was deficient, and (2) the deficient performance "prejudiced the defense." *Id.* at 687-91.[6] "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

As to performance, a movant must demonstrate that his counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688-89. A court evaluates the reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Id.* at 689; *accord Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (noting the performance prong is

---

[6]    A court has discretion to dispose of a claim at either prong, as there is no required order to the *Strickland* inquiry. *Strickland*, 466 U.S. at 697 (explaining a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one"). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Id.*

"difficult" to establish).

The prejudice prong is satisfied by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## III. DISCUSSION

As grounds for relief, Movant argues his trial counsel rendered ineffective assistance by failing to: (1) investigate, subpoena or call witnesses capable of contradicting or refuting false testimony of government witnesses; (2) adequately cross-examine and/or impeach the government's trial and sentencing hearing witnesses; (3) present documentary evidence supporting the "theory of defense" and refuting testimony of government witnesses; (4) call a handwriting expert to refute the government's claim that Movant purchased pseudoephedrine multiple times in order to manufacture methamphetamine; (5) object to incomplete, misleading jury instructions; and (6) file a suppression motion.[7] Grounds one through four and six fall within the rubric of trial strategy and will be analyzed accordingly.

### A.    Trial Counsel's Strategic Decisions

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see Solomon v. Kemp*, 735 F.2d 395, 402 (11th Cir. 1985) (stating "in the course of a pre-trial investigation, counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all available hope withers"). "An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy." *Florida v.*

---

[7]    In his sixth ground for relief, Movant also argues that appellate counsel provided ineffective assistance by failing to raise the suppression issue on appeal.

*Nixon*, 543 U.S. 175, 187 (2004). That said, only "fundamental" or "personal" decisions (*i.e.*, "whether to plead guilty, waive a jury, testify on [one's] own behalf, or take an appeal") require the client's informed consent. *Id.* "Strategic" decisions (*e.g.*, what evidence to introduce, questions asked on cross-examination) may be made without a client's consent. *See Taylor v. Illinois*, 484 U.S. 400, 418 (1988) (noting "[t]he adversary process could not function effectively if every tactical decision required client approval"); *see, e.g., Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (identifying as strategic decisions "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed"); *accord United States v. Chapman*, 593 F.3d 365, 367-68 (4th Cir. 2010) ("[W]hich witnesses to call is a classic tactical decision left to counsel, . . . and it remains a decision for counsel even when the client disagrees.") (citing *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991)). Ultimately, if counsel "conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.'" *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (citing *Strickland*, 466 U.S. at 688).

1.   Failure to contact witnesses or present witness testimony (Ground One)

Movant alleges in ground one that trial counsel rendered ineffective assistance by failing to interview then call at trial as defense witnesses the following nine individuals: Wade Turnage, Willis Crumbley, Shannon Grimes, Andy Small, Jerry Pearson, James Faison, William Lloyd, John Kyle (Movant's co-workers, friends and/or neighbors) and Jennifer Jones (Movant's state parole officer).[8]   Movant included as exhibits to his § 2255 motion unsworn statements from

---

[8]      Movant's motion includes a one-page e-mail from "acecorvettes@embarqmail.com" to trial counsel dated November 9, 2011. The e-mail identified six individuals as "[g]ood [defense] witnesses" – two of whom (John Kyle and James Faison) are named in Movant's § 2255 motion.

each witness, with the exception of Jones.[9]  A summary of each statement appears below:

(i)     Turnage, a "regular" customer of the shop, claims he gave Movant "a $100 bill" on the day of Movant's arrest in exchange for a truck door panel and not "meth" as claimed by Smith.  Turnage claims also that Aaron never sold him a container of anhydrous ammonia despite Aaron's testimony to the contrary.  He further claims that he never saw Movant "use meth or anything like that." Finally, he claims that he witnessed Movant taking "Sudafed, nasal sprays and other medications" for sinus problems.  § 2255 Mot., Ex. A [DE 491-1 at 4].

(ii)    Crumbley, Movant's "nearest neighbor," claims he visited the shop "numerous times" and "never [saw] anything that had to do with drugs."  He claims further that Movant had "several confrontations" with Aaron regarding Aaron's drug use.  Finally, he disputes Aaron's testimony that he (Aaron) stored "a hydrogenous ammonia tank" on Crumbley's property.  *Id.*, Ex. B [DE 491-1 at 6].

(iii)   Grimes, who assisted with "bodywork" at the shop, contests Smith's testimony that Movant purchased drugs from Grimes.  Grimes claims that he never "hung out" at the shop nor did he sell drugs there.  Grimes claims further that there "simply was no drug dealing of any sort going on at that shop."  *Id.*, Ex. C [DE 491-1 at 8].

(iv)    Small, Movant's co-worker,[10] claims that "Sudafed was among the many sinus products [Movant] kept in the shop" and that "[w]e began to notice the disappearance of these, and other items, from the shop whenever the kids were around."  He disputes Boykin's testimony that he (Boykin) "cooked drugs 8 times" in the shop, stating "I don't believe [Boykin] was even in the shop 8 times . . . ."  *Id.*, Ex. D [DE 491-1 at 10].

(v)     Pearson, a part-time employee at the shop in 2010, claims that Phillip Poppell placed drug paraphernalia in the shop the morning of Phillip's arrest as no such paraphernalia existed the evening before when Pearson was working there.  He claims also that "[a]t no time was meth ever made, nor items bought for that purpose . . . because [Movant] was on parole [and] did not wish for any trouble to be around him."  Finally, Pearson claims that he witnessed Movant "run both Stephanie [Smith] and Aaron off of his property, as well as Kevin [Halpin] . . . ."  *Id.*, Ex. E [DE 491-1 at 11].

---

[9]     Six of the nine unsworn statements, identified as "affidavits" by Movant, were notarized, although one lacks a notary seal or stamp while a second does not indicate whether the individual personally appeared before the notary. *See* N.C. Gen. Stat. § 10B-41 (providing requirements of notarial certificate for an acknowledgment).

[10]    Small states that he has known Movant "since childhood." § 2255 Mot., Ex. D [DE 491-1 at 10].

(vi)  Faison, Movant's friend,[11] claims he entered the shop on "numerous occasions, both during the day as well as in the evenings. I have socialized with the Lewis' and been in their home. I was never given any reason to be suspicious of drug trafficking, manufacturing or anything of that nature." *Id.*, Ex. F [DE 491-1 at 13].

(vii)  Lloyd, who worked at the shop "off and on" from 2007 through 2010, claims he never saw "people cooking or doing drugs while [he] was there." He claims also that Valerie (his daughter) began dating Halpin while separated from Aaron and that Halpin "could do no less than talk about how he use[d] to cook drugs and get high." Finally, he claims that he used to "run all of them away from my property, as well as [Movant] doing the same at his Corvette shop." *Id.*, Ex. G [DE 491-1 at 15].

(viii)  Kyle, Movant's neighbor, claims that at some point, Boykin stated he (Boykin) "had produced meth in the shop;" however, Kyle "never really thought much of [Boykin's] claims to have made meth inside the shop as [Kyle] would have most likely been working and would have made [Movant] aware of it." Kyle claims further that when he left the shop the evening of February 7, 2010, he "had not seen any drugs, drug paraphernalia or anything involving drugs in any part of [Movant's shop or residence]." As such, he "was shocked to see all the law enforcement officers and vehicles at [Movant's] residence" on February 8, 2010. Finally, Kyle claims he never saw drugs or "drug usage" during the two years he "spent in and around" Movant's property as Movant "made sure to keep known addicts away" to ensure a "clean residence for any inspections" by his parole officer. *Id.*, Ex. H [DE 491-1].

Finally, according to Movant, Jones would have testified that Movant (1) never tested positive on a random drug test while on parole, (2) was not arrested for a parole violation following law enforcement's discovery of the methamphetamine lab in the shop on February 8, 2010, (3) maintained a steady job, and (4) was not involved in any criminal activity during his parole. In short, the proposed testimony indicates these witnesses could have challenged the credibility of government witnesses Smith, Aaron, Halpin and Boykin and testified that Movant did not use cocaine and methamphetamine, did not provide pseudoephedrine for the manufacture of methamphetamine, and did not allow the use of his business for the production and distribution

---

[11]  Faison states that he is "one of the founding members of the Wilson Families In Action [and] the Vice Chairman of this state affiliated Drug Prevention Organization," "was in law enforcement for 19 years," "taught in the Criminal Justice System" and attended the same church as Movant. *Id.*, Ex. F [DE 491-1 at 13].

thereof.

Upon a thorough review of the over 800-page trial transcript, the court finds the trial record as a whole reflects that a complete defensive case was presented and argued by trial counsel. Here, it is evident from the record that trial counsel elected to challenge the testimony of the government's witnesses by way of strong cross-examination,[12] Movant's own trial testimony and argument to the jury in lieu of testimony of the prospective witnesses.

A review of the record shows trial counsel conducted thorough cross-examinations. Defense counsel attempted to impeach the credibility of various witness by pointing to potential inconsistencies in their testimony and, where applicable, exploring the nature of their plea agreements. For example, on cross-examination, Smith admitted she gave inconsistent statements during her interview with Detective Creech. Smith, however, blamed such statements on being "high" at the beginning of the interview and claimed she spoke the truth once she "got sober."[13] In particular, counsel elicited the following testimony from Smith:

> A: I wasn't high anymore towards the end of the interview.
>   . . .
> Q: I'm trying to clarify when you started telling the truth. You're a little unclear as to that?
> A: No, I'm not. [Detective Creech] asked me about David Lewis in the beginning of the interview and I lied.
> Q: But, towards the end when you said I got my meth from [David Lewis] . . . you were telling the truth?
> A: I have got meth from [David Lewis].
> Q: About telling the truth, you were telling the truth at that point, is that correct?
> A: Yes, sir.
> Q: About a minute prior to that statement were you still high and lying?
> A: I was high . . . the whole interview.
>   . . .

---

[12]     *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (stating "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested").

[13]     TT3 at 467:17-21; 469:11-16.

10

> Q: Well, you said just a minute ago you were no longer high towards the end of
> the interview and started telling the truth . . . .[14]

During Aaron's cross-examination, defense counsel also called into question Aaron's

credibility. For example, counsel elicited the following testimony from Aaron regarding

Movant's drug use:

> Q: Mr. Simmons, you said your daughter lives with David and Cathy [Lewis]?
> A: Yes.
> Q: Why?
> A: Because my wife live[d] there also.
>     . . .
> Q: Were you concerned for your daughter's welfare?
> A: No.
> Q: But she was living with a bunch of folks on meth according to your testimony,
>    is that right?
> A: Yes, sir.[15]

Also during cross-examination, Aaron admitted that (1) Movant fired him at least twice in the

past, (2) his relationship with Movant was "off and on . . . since [he] met him," (3) he had a

physical altercation with both Movant and Valerie, and (4) he used methamphetamine

regularly.[16] Finally, Halpin conceded on cross-examination that Movant had demanded Halpin

leave his property and that he and Movant had "one or two" "falling outs" in the past.[17]

Moreover, the proposed testimony of Turnage, Grimes or Small may have been more

harmful than helpful to Movant. For example, Boykin's testimony that Movant sold Turnage

methamphetamine and that Turnage sold Movant "ice" supports statements made by both Smith

and Aaron regarding Turnage's drug association with Movant.[18] Also, Smith's statements about

---

[14] TT3 at 470:23-25, 471:1-17.

[15] TT2 at 315:8-16.

[16] TT2 at 318:4-9, 319:8-13, 322:5-6, 324:24.

[17] TT2 at 389:7-8, 14-15.

[18] *See* TT2 at 199:2-25, 202:1-19.

11

Grimes are supported by the testimony of Aaron and Valerie. In particular, Aaron testified that Grimes (1) introduced him to methamphetamine, (2) bought pseudoephedrine pills from Aaron and (3) "was locked up [on state charges] for manufacturing methamphetamine."[19] Similarly, Valerie testified that Grimes introduced methamphetamine to "the shop" and while not Movant's "drug of choice," he "did use" methamphetamine.[20] As for Small's proposed testimony regarding Movant's reliance on pseudoephedrine for sinus problems, Halpin testified that Small, on behalf of Movant, purchased pseudoephedrine for methamphetamine cooks.[21] Halpin testified further that Small witnessed Halpin "cook" at the shop.[22]

Finally, the testimony of Movant's wife and stepdaughter undermines the claims made by the proposed witnesses that Movant did not use, purchase or sell illegal drugs. TT3 at 650:9-24 (testimony of Cathy Lewis that Movant used methamphetamine "in moderation"); TT4 at 799:19-25, 800:1-9, 801:23-25, 802:1-8, 806:9-16 (testimony of Valerie that Movant both purchased and used methamphetamine and was aware of the cooking of methamphetamine at the shop).

Further, even if Movant demonstrated that trial counsel's performance was deficient for failing to call any or all of the nine named prospective witnesses, he cannot satisfy *Strickland's* prejudice prong. In addition to Valerie's unchallenged testimony, the Government presented more than sufficient credible evidence regarding the existence of a methamphetamine laboratory in the shop and of Movant's numerous purchases of pseudoephedrine through the testimony of

---

[19]     TT2 at 258:18-22, 260:17-21.

[20]     TT4 at 799:19-25, 800:1-9, 801:23-25, 802:1-8.

[21]     TT2 at 364:4-6; 372:8-24.

[22]     *Id.* at 384:18-20.

law enforcement officials. For example, Special Agent Kelly testified about the 96 "pseudophed tablets" found at the shop on February 8, 2010. She also testified about the various pharmacy and store logs documenting Movant's purchase of 1,526 pseudoephedrine tablets between April 2009 and June 2011.[23] She testified further that not only did Movant make multiple purchases of pseudophed in a single day, such purchases often coincided with similar or identical purchases made by Boykin or co-conspirators Aaron, Valerie, Halpin or Spencer.[24]

Moreover, Movant was called as a defense witness at trial and he testified extensively on his own behalf. Movant provided exhaustive testimony regarding (1) his relationship with Aaron, Grimes, Smith, Boykin and Phillip and Malachi Poppell, (2) the events of February 8, 2010 and Jones' (Movant's state probation officer) alleged belief that Movant was ignorant of the methamphetamine lab found in the shop that day; (3) his sinus problems and reliance on numerous medications due to breathing difficulties, and (4) the day of his arrest.[25] As was the prerogative of the jury, it rejected Movant's testimony. Thus, the record in this case clearly demonstrates that the prospective testimony would not have aided the defense in that it was merely cumulative to Movant's own testimony presented at trial and/or not exculpatory.

Given Movant cannot show a reasonable likelihood that the outcome of the trial would have been different, trial counsel's performance was not constitutionally ineffective for failing to call at trial the nine named prospective witnesses. *See Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) ("The decision not to call a particular witness is typically a question of trial strategy that . . . courts are ill-suited to second-guess." (quotation marks omitted)). This claim therefore

---

[23]     TT3 at 593:4-11.

[24]     *See, e.g.*, TT3 at 556:21-25, 557:1-7, 560:12-23, 573-581, 583:7:21, 587:13-25, 588-90.

[25]     *See* TT3 at 660-785.

Case 5:11-cr-00229-BO   Document 580   Filed 07/18/16   Page 13 of 23

must be dismissed. *Strickland*, 466 U.S. at 694.

2.  Failure to adequately cross-examine and/or impeach witnesses at trial and sentencing (Ground Two)

In ground two, Movant challenges counsel's cross-examination of Phillip Poppell and Aaron Simmons at trial and of Special Agent Kelly Page at sentencing.

i.  *Cross-examination of Poppell*

Movant faults counsel for failing to introduce statements Poppell made to police the day of his arrest (February 8, 2010) regarding Movant's lack of drug use. On direct examination, Poppell testified that he used cocaine and methamphetamine with Movant "probably every time" he (Poppell) visited the shop, which was "once or twice a week" from December 2009 until his arrest on February 8, 2010.[26] While counsel did not introduce the actual police report during cross-examination, he questioned Poppell about statements regarding Movant made therein:

> Q. On February the 8th of 2010, Mr. Poppell, did you lie to the police?
> A. Come again?
> Q. Did you lie to law enforcement on February the 8th of 2010?
> A. Did I lie to law enforcement? No, sir.
> Q. Do you recall telling law enforcement that I have never seen David [Movant] use any type of illegal drugs?
> A. I do not recall, Sir.
> Q. Have you - - Do you recall saying to law enforcement I have heard him joke about it, but never seen him physically do any?
> A. I do not recall saying that, sir.[27]

Based on the above, trial counsel successfully used Poppell's prior inconsistent statements to police to impeach Poppell's damaging testimony elicited on direct examination. Thus, even assuming *arguendo* that counsel's performance was objectively unreasonable, Movant has not shown that he suffered any prejudice as a result. *See Strickland*, 466 U.S. at 697.

---

[26]    TT2 at 149:4-18.

[27]    TT2 at 155:1-13.

ii.   *Cross-examination of Aaron*

Movant argues trial counsel should have questioned Aaron's testimony regarding (1) the existence of two tanks of anhydrous ammonia and (2) the method Aaron used to calculate the amount of anhydrous ammonia in the second tank.[28]  During direct examination, Aaron testified that he stole a half-full tank of anhydrous ammonia from Pikeville at National Welders in October 2009.[29]  According to Aaron, the stolen tank contained "somewhere around 15 gallons" and when he sold it to Turnage almost a year later,[30] it had 10 gallons remaining.[31]  Aaron testified that he "got" a second tank in July 2010 and estimated it contained 20 gallons of anhydrous ammonia.[32]  Here, trial counsel's strategy, which was evident at trial, was to damage Aaron's credibility on cross-examination.  In pursuit of this strategy, defense counsel effectively elicited damaging statements form Aaron, as discussed *supra*.  *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of . . . cross-examination is entrusted to the judgment of the lawyer, . . . and [a court] should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.").

iii.   *Cross-examination of Special Agent Kelly Page at the June 7, 2012 Sentencing Hearing*

Movant faults counsel for not cross-examining Special Agent Page at the sentencing

---

[28]   Movant also claims trial counsel failed to impeach Aaron regarding his testimony that he did not purchase pseudophed tablets from Walgreens on April 1, 2009.  TT2 at 282:22-25, 283:1-3.  Movant ignores the fact that shortly following that testimony, the Government refreshed Aaron's recollection with a copy of his signed receipt from Walgreens indicating to the contrary.  *Id.* at 284:6-25.

[29]   TT2 at 274:19-25, 275:11-13.

[30]   When questioned whether he sold the tank to Turnage, Aaron initially replied, "I didn't receive anything for it when we got there."  Aaron then testified that Turnage "gave me what little bit he had in his pocket, which was 50 bucks, I think . . . ."  TT2 at 279:9-13.

[31]   *Id.* at 277:22-23, 279:3-5, 19-21.

[32]   *Id.* at 279:22-24.

hearing regarding the following: (1) whether Aaron stored the first anhydrous ammonia tank on Movant's property; and (2) whether Aaron used five gallons out of that tank to cook methamphetamine. As to the storage location, Special Agent Page erroneously testified at the sentencing hearing that Aaron stored the first tank on Movant's property. *See* TT2 at 275:11-21, 276:1-13 (Aaron's testimony that he stored the tank either at co-defendant Jernigan's home or in the woods behind the home of a third-party). Movant provides no further argument, simply concluding there is a "reasonable probability that there would have been a different outcome at sentencing" had counsel "exposed" Agent Page's inaccurate testimony.

The court assumes that Movant implicitly disputes the 2,000 grams of methamphetamine for which he was held accountable. *See* Sentencing Tr. at 13:6-19 [DE 424] (Agent Page's testimony that 400 grams and 1,600 grams could be produced from the first and second tanks of anhydrous ammonia, respectively). Even if Movant was held accountable for 1,600 grams only, Movant's base offense level would remain 34. *See* U.S.S.G. § 2D1.1(c) (2011) (providing a base offense level of 34 if "[a]t least 1.5 KG but less than 5 KG of Methamphetamine"). Accordingly, even if counsel's performance was objectively unreasonable, the error was harmless, thus negating any ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). Because exclusion of the first tank would not impact Movant's base offense level, his second argument warrants neither discussion nor relief. Movant fails to demonstrate that counsel's error rendered sentencing "fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

3. <u>Failure to present documentary evidence</u> (Ground Three)

In ground three, Movant argues trial counsel rendered ineffective assistance by not

obtaining and presenting Movant's parole drug test results (to support his claim that that he did not use methamphetamine) and medical records (to justify his possession of pseudoephedrine) and Kevin Halpin's arrest and conviction records for identity theft. In short, Movant faults counsel's strategy to undermine the credibility of the Government's witnesses through cross-examination alone.

As discussed *supra*, the Government offered ample evidence regarding Movant's role in the methamphetamine conspiracy, including possession of pseudoephedrine and other materials to manufacture methamphetamine, and counsel zealously attacked the credibility of that evidence through cross-examination. Even if Movant successfully satisfied prong one of the *Strickland* standard, which he has not,[33] this ground would fail because he cannot show that there is a reasonable probability that but for the alleged error in choosing the strategy of cross-examination in lieu of documentary evidence, the results of the proceeding would have been different. There was sufficient evidence for a rational jury to find Movant guilty based upon the testimony of his wife and stepdaughter as to his drug use (and his purchase of drugs according to his stepdaughter) and Agent Page's testimony as to both the amount and the frequency at which Movant purchased pseudoephedrine.[34]

4.    Failure to obtain and present a handwriting expert witness (Ground Four)

Movant claims in ground four that trial counsel rendered ineffective assistance by failing to call a handwriting expert to refute the Government's claim that Movant purchased

---

[33]    Movant's claim that his counsel performed unreasonably in failing to introduce Halpin's arrest and conviction records for identify theft is without merit. On direct examination, Halpin acknowledged those convictions. *See* TT2 at 336:12-14. Also, as discussed *supra*, on cross-examination, counsel exposed Halpin's bias against Movant.

[34]    *See* TT3 at 581:11-23 (Agent Kelly's testimony about "the frequency at which pseudoephedrine was [ ] purchased" by Movant and that the amount of tablets purchased exceeded "the recommended dosage on the package").

17

pseudoephedrine multiple times in order to manufacture methamphetamine.

During trial, Agent Page testified that Movant made 47 pseudoephedrine purchases between April 2009 and June 2011 based on "pseudoephedrine logs" provided by various pharmacies. Agent Page testified further that any pseudoephedrine purchase required presentation of a photo I.D.[35] Movant testified on direct examination, however, that while he "bought some" pseudophed tablets in that two-year period, he did not make 47 purchases.[36] Movant testified further that his driver's license was missing during a portion of the relevant time period and that "some signatures" on the logs were not his.[37] At trial, defense counsel questioned Special Agent Page on cross-examination about these purchases:

> Q. You testified . . . that on several of the purchases it doesn't say David Lewis, but says Davis Lewis --
> A. Yes, sir, it does.
> Q. -- Is that correct?
> A. That's correct.
> Q. Do you know on each of these specific occasions . . . all that you listed, do you know that David Gerald Lewis walked into the pharmacies?
> A. No, the -- no, sir.
> Q. Do you know whether he produced his identification for each one of these purchases?
> A. I know you have to provide your I.D. in order to purchase, but I don't know that Mr. Lewis did that, yes, sir.
> Q. Do you know whether anyone else ever had Mr. Lewis's identification?
> A. No, sir, I have no knowledge.
> Q. You have provided in discovery a videotape of [co-defendant] Miller purchasing some pseudophed, is that correct?
> A. Yes, sir, I believe so.
> Q. Did you ever come across any video of Mr. Lewis purchasing any of this?
> A. No, sir, I don't have any videos with Mr. Lewis purchasing.
> Q. So, it is at all possible that someone else went into one of these pharmacies and presented themselves as David Lewis, is that correct?

---

[35]     TT3 at 614:7-17.

[36]     TT3 at 715:6-10.

[37]     *Id.* at 715:12-20,716:13-16, 21-25, 717:1-9.

A. Yes, sir. Yes, sir, anything's possible. Yes, sir.[38]

Based on this excerpt, it appears defense counsel's strategy was to create doubt as to the

reliability of the logs as evidence of Movant's pseudoephedrine purchases through the cross-

examination of Agent Page. Even though this trial tactic ultimately did not work, counsel's

performance was not deficient. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney

performance requires that every effort be made to eliminate the distorting effects of hindsight.").

Moreover, Movant provides no evidence that a handwriting expert would have testified that

someone else signed the logs or that the expert's testimony would have caused sufficient doubt to

undercut the Government's case. *Cf. Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008)

(rejecting ineffective assistance claim based on failure to retain expert where defendant "failed to

show . . . that medical experts could have reached a conclusion . . . contrary to the conclusions

reached" by the prosecution's witnesses). Since Movant fails to show either unprofessional error

or prejudice, his fourth claim fails.

5.    Failure to move for suppression of evidence (Ground Six)

In his response, Movant brings a "4th Amendment 'search and seizure' issue" as a sixth

claim for relief. Resp., Ex. K "David Lewis Affidavit" [DE 512-1 at 7]. In particular, Movant

states that he "presents this issue in good faith at this time due to inadequate assistance of

counsel at trial and on initial review." *Id.* Movant claims the search of the back pack in the bed

of Movant's truck – the criminal case's triggering event – violated the Fourth Amendment as he

> gave consent to truck in my possession, not to bags not belonging to me, nor in
> my possession or control. I was in the trailer, out of sight of truck, anyone could
> have placed anything in those bags while I was being questioned and search
> inside trailer. I allege the female-agent next to the bags unzipped the bag, put the
> standing-tube in or pulled it out of the bag, so as to be in plain sight.

---

[38]    TT3 at 602:24-25, 603, 604:1.

*Id.* [DE 512-1 at 10] (quotation marks and emphasis in original omitted).

Movant did not charge his trial counsel with error for failing to file a suppression motion or raise his appellate counsel's failure on appeal in his initial § 2255 motion. Rather, Movant made this claim for the first time in his reply brief to the Government's response. A motion under § 2255 "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242; *accord Mayle v. Felix*, 545 U.S. 644, 649 (2005). Accordingly, Federal Rule of Civil Procedure 15, which governs motions to amend, applies to motions under § 2255. *See United States v. MacDonald*, 641 F.3d 596, 616 n.12 (4th Cir. 2011) ("Rule 15 is applicable to § 2255 motions by way of 28 U.S.C. § 2242, Federal Rule of Civil Procedure 81(a)(4), and Rule 12 of the Rules Governing [§] 2255 Proceedings . . . ."). According to the Certificate of Service attached to Movant's reply brief, Movant mailed his brief on October 23, 2014. As noted *supra*, the statutory period during which Movant could timely file his petition ended on July 2, 2014.

Where proposed amendments to a § 2255 petition are submitted after expiration of the applicable statute of limitations, such amendments may be permitted pursuant to Rule 15(c) where they "relate back" to the claims in the original petition. *See* FED. R. CIV. P. 15(c). Under Rule 15(c)(1)(B), it must be shown that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *Id.*(c)(1)(B). "The fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c)." *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000); *see also Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) (holding that an untimely § 2255 claim "must have more in common with the timely filed claim than the mere fact that

20

they arose out of the same trial and sentencing proceedings"). Rather, "in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Davenport*, 217 F.3d at 1344 (citations omitted). Here, Movant's initial motion brought claims regarding presentation of evidence at trial, testimony during sentencing and jury instructions. Accordingly, the relation back provision does not apply to the proposed claim because it lacks an adequate nexus to Movant's original claims.

Even if Movant had timely amended his § 2255 motion, Movant would not be entitled to relief because he did not have standing to contest the search of the back pack. Indeed, Movant expressly disavows ownership or possession of the bag. *See United States v. Matlock*, 415 U.S. 164, 171 (1974) (explaining consent to search may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched). Although failure to file a suppression motion can amount to ineffective assistance of counsel, a defendant "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). "Fourth Amendment rights are personal rights [that] . . . may not be vicariously asserted," and suppression of the product of a Fourth Amendment violation can be sought only by those whose rights are violated by the search. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). Here, it is unclear to whom the personal rights belonged but they certainly did not belong to Movant. *See, e.g.*, TT3 at 508:20-25, 509:1-13 (testimony of Officer that neither Movant nor his passenger, Stephanie Smith, claimed ownership of the back pack). Accordingly, trial counsel had no basis for filing a suppression motion with respect to the back pack and appellate counsel

21

had no basis for raising the suppression issue on appeal. *See United States v. Aldea*, 450 F.

App'x 151, 152 (3d Cir. 2011) ("Counsel cannot be ineffective for failing to raise meritless

claims"); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections

is not ineffective lawyering; it is the very opposite.").

**B.      Failure to object to jury instructions (Ground Five)**

Movant argues in ground five that counsel rendered ineffective assistance in failing to

object to the court's jury instructions.  In particular, Movant faults counsel for not objecting to

the court's failure to instruct the jury that it (1) was required to determine 500 grams or more of

methamphetamine was reasonably foreseeable to Movant; and (2) needed to unanimously agree

that Movant conspired to violate at least one of the three objects of the conspiracy charged in the

superseding indictment.

The Fourth Circuit specifically addressed both issues that Movant now uses as a predicate

for an ineffective assistance of counsel claim.  Regarding the "foreseeability" instruction, while

the Fourth Circuit found that the court committed plain error, it upheld Lewis' conviction on

count one "because the . . . error did not seriously affect the fairness, integrity, or public

reputation of judicial proceedings.  The evidence adduced at trial easily established that 500

grams or more of methamphetamine was reasonably foreseeable to Lewis." *Lewis*, 517 F. App'x

at 154-55.   Thus, even assuming *arguendo* that counsel's performance was objectively

unreasonable, Movant has not shown that he suffered any prejudice as a result. *See Strickland*,

466 U.S. at 697.

As to the "objects of the conspiracy" instruction, the Fourth Circuit summarily rejected

the argument, stating "[w]e conclude after review that the record does not support [appellate]

counsel's assertion, and we therefore discern no plain error." *Lewis*, 517 F. App'x at 155.

Movant cannot recast this issue under the guise of a section 2255 claim of ineffective assistance

of counsel. *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (explaining a

habeas motion is not the appropriate forum to re-litigate issues previously addressed on direct

appeal); *United States v. Michaud*, 925 F.2d 37, 41 (1st Cir. 1991) ("[I]ssues decided on direct

appeal may not be relitigated under a different label on collateral review." (citation omitted));

*United States v. Johnson*, 105 F.3d 670 (table), 1997 U.S. App. LEXIS 69, at *4-5 (10th Cir. Jan.

2, 1997) ("We cannot again review this claim simply because it has been recast in the clothing of

an ineffective assistance of counsel claim.").

## IV.    CONCLUSION

For the foregoing reasons, the Government's motion to dismiss [DE 497] is ALLOWED,

Movant's motion to vacate [DE 491] is DENIED and Movant's motion for adjudication [DE 561]

is DISMISSED AS MOOT. This action is DISMISSED. The court perceives no basis for the

issuance of a certificate of appealability, and such certificate therefore is DENIED.[39] The Clerk

of Court is DIRECTED to close this case.

SO ORDERED.

This the 18th day of July, 2016.

**JAMES C. FOX**
Senior United States District Judge

---

[39]    *See* 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing § 2255 Proceedings; *Miller-El v. Cockrell*, 537
U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).